This action was brought to impress a trust upon certain real estate in New Brunswick. At the beginning of the action title to the real estate was in the defendant, Martin Securities Company, a corporation, which had entered into a contract to sell the property to Rutgers college for the sum of two hundred thousand dollars ($200,000). The college was made a party defendant, as was also Mahlon C. Martin, Jr., a brother of complainant, and the owner of the stock of Martin Securities Company. The bill sets forth that Mahlon C. Martin, Jr., who had shortly before transferred the property to the corporation, held it in trust for the benefit in equal shares of five persons, namely, the complainant, Johnson Martin, who was another brother, their two sisters, Mrs. Van Auken and Mrs. Meier and Mahlon himself; and that the proposed sale to the college was in violation of the rights of the complainant. Complainant asked that the transactions between Mahlon C. Martin, Jr., the securities corporation and Rutgers college be set aside, and that there be transferred to complainant a one-fifth interest in the property.
On the application of Rutgers college, Johnson Martin and the two sisters were brought in as parties defendant. During the pendency of the action the court of chancery allowed the sale to the college to be consummated, with provision for setting aside of sufficient of the proceeds of the sale to satisfy *Page 575 
the claim of the complainant; and the college was thereupon dropped from the action.
The complainant bases his rights upon an alleged parol contract whereby Mahlon agreed to hold the real estate in question in trust for the equal benefit of all the five brothers and sisters, and contends that this agreement was entered into in consideration of the promise of complainant that he would not contest the will of their aunt Eliza M. Abbe.
The circumstances leading up to the making of the alleged agreement are as follows:
In 1893, Mrs. Abbe and her two sisters, Serena A. Martin and Maria R. Martin, who were aunts of the parties, had acquired the property in question as joint tenants by deed from a brother. They occupied the property as their residence until their respective deaths. On June 22d 1911, the three sisters signed a deed purporting to convey the property to St. Peter's Church. The purpose of the deed was to keep the land forever out of the possession of Rutgers college against which they held some grievance. There was no consideration for the deed and the grantors remained in possession. The deed was not delivered to the grantee, but was handed to their family doctor, it being apparently their intention that delivery should be made only after their deaths.
Serena A. Martin died in 1912 and Maria R. Martin died in 1918, and accordingly Eliza M. Abbe became vested with title to the property, subject to the effect of the deed to the church. Shortly after the death of Maria R. Martin, Eliza M. Abbe filed a bill in the court of chancery to set aside the deed to the church. In June, 1919, the court of errors and appeals affirmed a decree setting aside this deed on the ground that there was no valid delivery, and accordingly full and complete ownership of the property was recognized as being vested in Eliza M. Abbe.
In December, 1920, Eliza M. Abbe died. She had executed a will in 1917, which after providing for certain specific legacies, including one of $25,000 to complainant, left the residue of her estate to Mahlon. The operation of this residuary clause devised the real estate in question to Mahlon. *Page 576 
Had Mrs. Abbe died intestate, or her will been set aside, this property would have descended by operation of law to the five brothers and sisters, parties to this action, since they were the sole heirs of Mrs. Abbe.
To substantiate his claim, complainant testified substantially as follows:
At the time of his aunt's death he was outside the state, but on learning of it he went to see his brother Mahlon in January of 1921. At this interview he testified that he discussed with his brother the doubtful condition of their aunt Eliza's mind and the largely increased amount of her residuary estate because of the decree of the court invalidating the conveyance to the church. He says he declared his intention to contest the aunt's will so that he would receive a one-fifth interest in the New Brunswick property. He further testified that his brother fully acknowledged an agreement made by Mahlon in 1917, to the effect that Mahlon would hold the residuary estate of their aunt Eliza, when it came into his possession, for the equal benefit of all the five brothers and sisters. He said that Mahlon asked him not to contest the will, and that in consideration of the agreement by complainant not to contest the will, Mahlon expressly agreed and promised that he would renew all the understandings and agreements relating to the New Brunswick property that they had made in the past and that he, Mahlon, gave complainant his solemn promise that he did not regard the New Brunswick property as belonging to him even though it came into his name by virtue of the will, and further, that he, Mahlon, agreed that when the property was sold he would carry out the same agreement that he had made for the other brother and two sisters and would divide the proceeds among the heirs the same as though there had not been any will. Complainant further testified that he asked his brother Mahlon to put this agreement in writing but that his brother persuaded him it was unnecessary and undesirable to do so. No written acknowledgment of the agreement was ever made. There was no contest of the will. Complainant contends that whereas he fulfilled the promise of the agreement Mahlon *Page 577 
never carried out his part, but in 1924, conveyed the property to the Martin Securities Company which immediately proceeded to make a sale of the property to Rutgers college, and that Mahlon has refused to recognize the rights or interest of complainant to his one-fifth interest.
Defendant Mahlon C. Martin, Jr., denies that he made any such agreement as that testified to by complainant. He says that the conference in 1921 related to an oil business in which the three brothers were interested, and that at most only casual reference was made to the will of Mrs. Abbe. This seems to be borne out at least in part by an exchange of correspondence between them just prior to the conference. The two sisters and the brother, Johnson, deny that any such agreement was made with them, although complainant has alleged in his bill that they were parties to it. Complainant admits that he never spoke to them about this alleged agreement. These facts of themselves seem to cast great doubt upon the validity of complainant's claim; for if Mahlon had in fact made such an agreement it seems highly improbable that Johnson and the two sisters would not have known of it, since, according to the complainant, they were to be equal beneficiaries with him.
I attach but little credence to the testimony of the complainant that the agreement alleged in the bill was made. Its existence rests solely on his uncorroborated testimony. Not only is he contradicted by the testimony of all the other parties interested, but certain prior transactions between him and Mahlon tend to discredit his testimony.
Around the first of the year 1919, there was correspondence between complainant and Mahlon, which resulted in two loans to complainant, which Mahlon agreed to cancel out of the residuary estates of their two aunts, Maria and Eliza. In my opinion, from the nature of these letters, they would almost certainly have contained some reference to the alleged agreement of 1917, if one had existed. Then, too, if the interview of 1921 had taken the course attributed to it by complainant, it is incredible that the 1919 loan transaction would not have been referred to, yet the long and detailed testimony *Page 578 
of complainant as to the 1921 interview does not contain any such reference. According to Mahlon's version of that interview, there was no reason why there should have been any such reference.
I find accordingly that the complainant has failed to establish the essential allegations of the bill by credible proof. It is therefore unnecessary to discuss the question as to whether the statute of frauds applies. I will advise a decree dismissing the bill. *Page 579